IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| PACIFIC FRONTIER, INC., et al.,<br><br>Plaintiffs,<br><br><br>vs.<br><br><br>KAYSVILLE CITY, et al.,<br><br>Defendants. | AMENDED ORDER[1]<br>AND<br>MEMORANDUM DECISION<br><br><br>Case No. 1:02-CV-129 TC |

## I. INTRODUCTION

This First Amendment commercial speech case, brought pursuant to 42 U.S.C. § 1983, comes before the court on the parties' dispositive cross-motions and various motions to strike. The Plaintiffs (both entities and individuals) market and sell Kirby vacuum cleaners through door-to-door solicitation.  The City of Kaysville, Utah, passed a series of ordinances regulating door-to-door sales practices (there were four versions of the solicitation ordinances – the fourth solicitation ordinance is the one currently in effect).  The Plaintiffs bring a facial challenge to all four solicitation ordinances, alleging that each is unconstitutional under the First Amendment (although the first three solicitation ordinances are not currently in effect, the Plaintiffs allege that they were injured when each ordinance was in effect).  The Defendants, Kaysville City and

---

[1]The court issues this amended order to make one change on page 25 of the original order.

certain Kaysville officials,[2] raise various defenses.  In particular, they challenge the Article III standing of the Plaintiffs and contend that Plaintiffs' commercial speech is misleading, so, consequently, it is not protected speech.

For the reasons set forth below, the court finds that the all of the Plaintiffs except Redwood Division Pro Club 100% have standing, that Plaintiffs' facial challenge is not subject to a misleading speech defense, and that the solicitation ordinances are unconstitutional as written.

## II. <u>PROCEDURAL BACKGROUND</u>

In their Third Amended Complaint, the Plaintiffs allege the following nine causes of action: (1) "First Amendment Speech and Overbreadth"; (2) "First Amendment Vagueness"; (3) "Prior Restraint on Speech"; (4) "Infringement on Political Speech"; (5) "Infringement on First Amendment Commercial Speech"; (6) "Fourth Amendment Unreasonable Seizure"; (7) "*Per Se* Discrimination Against Interstate Commerce"; (8) "Unbalanced Interference with Interstate Commerce"; and (9) "Denial of Fourteenth Amendment Equal Protection".  Plaintiffs have since withdrawn their interstate commerce and equal protection causes of action (Nos. 7, 8, and 9).[3]  (<u>See</u> Pls.' Mem. in Opp'n to Mot. for J. on the Pleadings at 3.)

The Plaintiffs seek monetary damages (both compensatory and special damages) and injunctive relief pursuant to 42 U.S.C. § 1983, as well as attorneys' fees and costs pursuant to 42

---

[2]The Plaintiffs name Kaysville's mayor, police chief, city manager, business licensing officer, and city council members in their official capacities.

[3]Plaintiffs' Cause of Action No. 6 (unreasonable seizure under the Fourth Amendment) is not addressed in the briefs before the court. Accordingly, the court does not reach the issue of whether an unreasonable seizure occurred.

U.S.C. § 1988.[4]  (See Third Am. Compl.; Pls.' Consolidated Reply Mem. (Docket No. 172) at 4 (stating that Third Amended Complaint seeks declaratory and monetary relief as to all four ordinances and equitable relief as to the fourth ordinance).)

The Plaintiffs have named Kaysville City, a municipal corporation and political subdivision of the State of Utah, and Kaysville City officials as Defendants.  Each of the individual Defendants is named in his or her official capacity.  Accordingly, Plaintiffs have essentially brought a § 1983 municipal liability action against Kaysville City (hereinafter "Kaysville," or "the City," or "Defendants").

The following motions are pending before the court: (1) Plaintiffs' Motion for Partial Summary Judgment (the Defendants have moved to strike this motion, see Docket No. 71.); (2) Plaintiff's Motion for Partial Summary Judgment for Injunctive Relief as it Relates to Solicitation Ordinance # 4; (3) Defendants' Motion for Judgment on the Pleadings; (4) Defendants' Motion to Strike Plaintiffs' Motion for Partial Summary Judgment; (5) Plaintiffs' Motion to Strike Defendants' Exhibits; and (6) Defendants' Motion to Strike Plaintiffs' Declarations.

Plaintiffs brought two separate motions for partial summary judgment because during the course of the litigation, the City of Kaysville enacted four different versions of its solicitation

---

[4]Despite the fact that Plaintiffs cite to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, as one of the bases for jurisdiction (as well as 28 U.S.C. §§ 1331 and 1343(3)), and despite the fact that Plaintiffs seek a declaration from the court that the solicitation ordinances are unconstitutional, the court analyzes this case using the framework for claims under 42 U.S.C. § 1983.  That framework is more applicable because Plaintiffs essentially rely on § 1983 as the basis for their claims and the remedies they seek (including monetary and injunctive relief, and attorneys' fees).  In addition, under the § 1983 analytical framework, the court will have to make a finding regarding constitutionality of the ordinances at issue.  Such a finding is consistent with the totality of what Plaintiffs seek in their Third Amended Complaint.

ordinance.  The court will treat the two motions for partial summary judgment as one, because

similar, if not identical, first amendment issues are raised by the two motions (e.g., whether the

ordinances create an unconstitutional prior restraint, are unconstitutionally vague, and do not

satisfy the commercial speech regulation requirements set forth in Central Hudson).[5]

Defendants' Motion for Judgment on the Pleadings challenges six of the nine causes of

action alleged by the Plaintiffs in the Third Amended Complaint.  The Defendants seek dismissal

of Plaintiffs' claims of First Amendment rights violations based on allegations of overbreadth,

vagueness, and infringement of political speech rights (Causes of Action Nos. 1, 2, and 4).[6]

In addition, the Defendants contend that the corporate entity plaintiffs and individual

Plaintiff Anthony Dye do not have standing to bring the claims alleged in the Third Amended

Complaint and that the remaining individual Plaintiffs also do not have standing to challenge

Solicitation Ordinance #3.  Specifically, the Defendants contest the standing of the corporate

entity Plaintiffs (as to all ordinances), individual Plaintiff Anthony Dye (at least with respect to

---

[5]On August 29, 2003, the court issued a Temporary Restraining Order and Preliminary Injunction Order, granting Plaintiffs' request for injunctive relief regarding Solicitation Ordinance #2 (also referred to as Ordinance No. 02-10-4 or "Amended Ordinance").  (See Aug. 29, 2003 Minute Entry, Docket No. 46; Oct. 10, 2003 Order, Docket No. 50).  While the findings in that preliminary injunction order may be relevant to the analysis here, they are not dispositive. "Courts repeatedly have emphasized that a decision as to the likelihood of success is tentative in nature and not binding at a subsequent trial on the merits."  Homans v. City of Albuquerque, 366 F.3d 900, 904-05 (10th Cir. 2004) (citing and quoting University of Tex. v. Camenisch, 451 U.S. 390, 395 (1981) ("[F]indings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits.")).  But see Fed. R. Civ. P. 65(a)(2) ("any evidence received upon an application for a preliminary injunction which would be admissible upon the trial on the merits becomes part of the record on trial and need not be repeated upon the trial.").

[6]They also challenged Plaintiffs' interstate commerce and equal protection claims (Causes of Action Nos. 7, 8, and 9), which, as noted above, have since been withdrawn by the Plaintiffs.

Solicitation Ordinances #3 and #4), and all remaining individual Plaintiffs with respect to Solicitation Ordinance #3.  (<u>See</u> Defs.' Reply Mem. in Supp. of Defs.' Mot. for J. on the Pleadings at 5, 5 n.4;  Defs.' Mem. in Opp'n to Pls.' Mot. for Partial Summ. J. Relating to Ordinance No. 4 at 32-39.)  They also assert that the commercial speech at issue is misleading, and, consequently, none of the parties have standing to assert their claims because misleading commercial speech is not protected by the First Amendment.

The court held two hearings in March 2005 to address the motions currently pending before the court.

### III. <u>FACTUAL BACKGROUND</u>

The material facts are not in dispute.  The facts are fully set forth in the parties' briefs, and the court will not repeat all of them here.  This section provides an overview of some of the relevant facts.  Specific facts will be discussed as necessary in the analysis section below.

### A.    <u>The Plaintiffs and Their Commercial Speech</u>

The Plaintiffs, who market and sell Kirby Company ("Kirby") vacuum cleaners, consist of (1) Kirby factory distributors (Pacific Frontier, Inc., J&L Distributing, and Edman & Sons, Inc. d/b/a Kirby of Utah and Idaho) (hereinafter "Distributors"), (2) Kirby area distributors (GP III, Inc., and BDL Distributing, Inc.), (hereinafter "Distributors") (3) a regional sales association for various distributors of Kirby products (Redwood Division Pro Club 100%) (hereinafter "Redwood"), and (4) independent Kirby dealers (Anthony Dye, William Franklin, Shaun Hoagland, Benjamin Lansford, Matthew Piehl, Parham Rezacipour, Pedro Silvaz Jr., and Chad Smuin) (hereinafter the "Dealers").  Kirby, which manufactures the vacuum cleaners being sold by the Plaintiffs, is not a party to the lawsuit.

5

The only method by which Kirby sells and markets its products is through independent contract distributors and, subsequently, independent contract dealers, who actually engage in door-to-door solicitation and in-home demonstrations.  Kirby factory distributors purchase Kirby cleaning systems directly from the Kirby factory and sell the systems to independent Kirby dealers with whom the distributor has contracted.  Kirby area distributors purchase Kirby systems from a factory distributor and otherwise operate similarly to the factory distributors by selling the systems to independent Kirby dealers.  The regional sales association for distributors of Kirby products – Redwood Division Pro Club 100% – serves distributors of Kirby products throughout the western United States.  (See Third Am. Compl. ¶ 4; Answer to Third Am. Compl. at p. 3, ¶ 4.)  In particular, it is funded by money received from distributors, including the Distributor Plaintiffs, and calculated based on a portion of funds for each sale of a cleaning system. Redwood then distributes the funds for trip incentives, prizes to sales representatives, training seminars, and other business-related activities.  The independent Kirby dealers (individuals, not corporate entities) do the actual door-to-door solicitation and in-home demonstrations, with assistance from the factory and area distributors.

Defendants allege that the Plaintiffs' marketing and in-home presentations, as well as the method used to sell the product, is misleading. For reasons explained below, those allegations and accompanying exhibits are not relevant to the court's analysis.  Accordingly, the court will not set forth the alleged problems with Plaintiffs' speech.

**B.**   **History and Relevant Content of the Kaysville Solicitation Ordinances**

At the heart of this case is a series of municipal ordinances enacted by the City of Kaysville to regulate the activities of door-to-door solicitors.  The first ordinance – Solicitation

6

Ordinance #1– was enacted on September 4, 2001, and completely banned commercial door-to-door solicitation.  On October 29, 2002, Kaysville repealed Solicitation Ordinance #1 and replaced it with Solicitation Ordinance #2 (effective November 1, 2002), which imposed a licensing scheme on commercial door-to-door solicitation.[7]  On October 17, 2003, Kaysville repealed Solicitation Ordinance #2 and replaced it with Solicitation Ordinance #3, which made substantive changes to the licensing scheme originally set forth in Solicitation Ordinance #2. Finally, on April 4, 2004, Kaysville repealed Solicitation Ordinance #3 and adopted Solicitation Ordinance #4, making relatively minor adjustments to the licensing scheme.  Solicitation Ordinance #4 is currently in effect.

At the beginning of each ordinance, the Kaysville City Council sets forth findings they used to justify enactment of the solicitation ordinances.  For example, the City defines its substantial interests behind the ordinances as ensuring the privacy and welfare of its citizens in their homes and protecting them from fraud and other criminal behavior.  (See, e.g., Solicitation Ordinance #4.)  The City also cites to the results of an investigation of the City's Police Chief which recounts the various crimes and arrests associated with door-to-door solicitation.  (See id.)

**Solicitation Ordinance #1 (Kaysville Ordinance No. 01-09-01)**

The ordinance in place when this dispute arose ("Solicitation Ordinance #1") prohibited door-to-door solicitation with certain very limited exceptions (if the solicitor was working for a charitable organization or had an invitation from the owner or occupant to make a presentation). A violation of Solicitation Ordinance #1 was punishable as a Class C misdemeanor.  (See

_____

[7]Plaintiffs claim that an unconstitutional "Interim Ordinance" was in place for the last two weeks in October 2002, but Defendants dispute this, saying it was only a draft of Solicitation Ordinance #2.  The court finds that there was no interim ordinance.

Solicitation Ordinance #1, attached as Ex. A to Third Am. Compl.)  The court will not discuss

the findings or the language of the ordinance, because the City has conceded that Solicitation

Ordinance #1 was unconstitutional and has repealed it.  (See Defs.' Mem. of P. & A. in Opp'n to

Pls.' Mot. for Partial Summ. J. (Docket No. 72) at 34.)

**Solicitation Ordinance #2 (Kaysville Ordinance No. 02-10-4)**

On October 29, 2002, shortly after the Plaintiffs filed suit, the City repealed and replaced

Solicitation Ordinance #1.  Instead of an outright ban on all solicitation with the two

aforementioned exceptions, the amended ordinance ("Solicitation Ordinance #2") established a

licensing scheme requiring a commercial door-to-door sales person to refrain from door-to-door

solicitation until he or she received a license from the City.  Solicitation Ordinance #2 provided:

> 16-11-7 Registration of Solicitors.  All persons . . . desiring to engage in soliciting
> within Kaysville City shall prior to doing so apply to the Kaysville City License
> Officer for an annual Certificate of Registration.

(Solicitation Ordinance #2, attached as Ex. 3 to Defs.' Mem. in Opp'n (emphasis added).)

Among other information, the application for the Certificate of Registration

("Certificate") required that the applicant provide the following:  (1) applicant's name and home

address; (2) name of organization and managers for whom applicant works; (3) purpose of

solicitation; (4) method of solicitation; (5) dates and locations of planned solicitation;

(6) whether the applicant has ever had a solicitation permit or license revoked in any other

jurisdiction, and if so, why; (7) a Federal Bureau of Investigation ("FBI") background check;

(8) fingerprints; and (9) payment of a fee "as determined applicable by the City."  (Id. at § 16-11-

8.)  Solicitation Ordinance #2 also provided that the Certificate must be renewed every six

months.  Further, the City could refuse to issue a Certificate for various reasons, including if the

applicant had given false information or been convicted of a crime, or for "[a]ny other reason rendering it manifestly inappropriate to issue a Certificate." (Id. at § 16-11-8(f).)  Further, if the City granted the applicant a Certificate, it had to be worn while soliciting, and had to be shown to residents or police officers on request. (Id. at § 16-11-10.)

**Solicitation Ordinance #3 (Kaysville Ordinance No. 03-10-1)**

On October 7, 2003, the City repealed and replaced Solicitation Ordinance #2.  The new ordinance (Solicitation Ordinance #3) contained two new substantive requirements and altered two others.  The new requirements were that the applicant submit proof that the applicant or the applicant's organization had registered with the Utah Department of Commerce, and obtained a tax identification number.  (Solicitation Ordinance #3, attached as Ex. O to Pls.' Mem. in Supp. (Docket No. 59), at § 16-11-8(e) & -8(f).)  The altered requirements were that a Certificate was valid for one year, instead of six months, and that the background check must be performed by the Utah Bureau of Criminal Investigation ("BCI") instead of the FBI.  (Id. at §§ 16-11-8(k);16-11-13.)

**Solicitation Ordinance #4 (Kaysville Ordinance No. 04-4-3)**

On April 20, 2004, the City repealed and replaced Solicitation Ordinance #3.  Besides elaborating on the purposes behind the ordinance, the April 20, 2004 ordinance ("Solicitation Ordinance #4") made only minor substantive changes (such as eliminating the requirement that a thumbprint be submitted with the application to solicit).  (Compare Solicitation Ordinance #3 at § 16-11-8(1)(I) and Solicitation Ordinance #4, attached as Ex. D to Pls.' Mem. in Supp. (Docket No. 159), at § 16-11-8(1).)

**C.**   **Enforcement History and the Plaintiffs' Alleged Injuries**

During the time Solicitation Ordinance #1 was in effect, Kaysville City arrested, cited,

charged, and prosecuted various dealers associated with J&L Distributing and Pacific Frontier for

alleged violations of the residential solicitation ordinance.  The group of dealers who were

arrested included Plaintiffs Anthony Dye and Benjamin Lansford.  Pacific Frontier posted bail

for its dealers.  The criminal charges were later dismissed.  Another eight dealers associated with

J&L Distributing – including Plaintiffs Shaun Hoagland, Pedro Silvaz, William Franklin, Parham

Rezacipour, Matthew Piehl, and Chad Smuin – were temporarily detained by city police and

warned not to violate the solicitation ordinance.

After Solicitation Ordinance #2 went into effect, Kaysville City arrested another dealer

associated with Pacific Frontier for violation of the residential solicitation ordinance.  That dealer

quit soon after her arrest.  J&L Distributing closed its Utah office.  GPIII began its business as a

Kirby distributor.  Gene Paul Reynolds, owner of GPIII and individual dealer, had obtained a

certificate to solicit under the ordinance, but the City revoked the certificate because he had not

provided an updated solicitation plan.  About a month later, the City was prohibited by the

court's TRO and Preliminary Injunction order from enforcing Solicitation Ordinance #2.

After Solicitation Ordinance #3 went into effect, a GPIII crew of dealers was stopped by

the police and informed of the licensing requirements under the new ordinance.  Also, dealer

Shawn Hoagland was arrested and charged with soliciting without a license.  GPIII posted bail

for Mr. Hoagland.

Approximately six weeks later, the City adopted Solicitation Ordinance #4.  Although

there have been no allegations of arrests or other specific enforcement events, the Plaintiffs have

refrained from soliciting in Kaysville because of the threat of criminal prosecution under an ordinance they insist is unconstitutional.

## IV. <u>ANALYSIS</u>

**A.    <u>Do the Plaintiffs have Standing?</u>**

Plaintiffs have the burden of proving that they have Article III standing.  <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992).  To establish Article III standing, the Plaintiffs must show that a case or controversy exists.  <u>Id.</u> at 559-60.  Specifically, the Plaintiffs must show that they have suffered an injury-in-fact, that there is a causal connection between their injuries and the challenged conduct (the injuries must be "fairly traceable" to the challenged conduct of the Defendants), and that it is likely the injury will be redressed by a decision favorable to the Plaintiffs.  <u>Id.</u> at 560-61.  The "injury in fact" must be "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical'."  <u>Id.</u> at 560 (internal citations and quotation marks omitted).

In addition to the constitutional "case or controversy" requirement, courts must take into account prudential considerations to determine whether the plaintiff has standing.  <u>See Warth v. Seldin</u>, 422 U.S. 490, 499 (1975).  That is, "even when the plaintiff has alleged injury sufficient to meet the 'case or controversy' requirement, . . . the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."  <u>Id.</u>  In the context of a facial challenge to an ordinance under the First Amendment, however, the prudential standing requirements are relaxed.[8]  <u>Virginia v. American Booksellers</u>

---

[8]At some point during the hearing on the pending motions, the Defendants, citing to <u>City of Lakewood v. Plain Dealer Publishing Co.</u>, 486 U.S. 750, 759 (1988), contended  that the solicitation ordinances do not have a close enough nexus to speech to allow a facial challenge

Ass'n, 484 U.S. 383, 392 (1988); Essence, Inc. v. City of Federal Heights, 285 F.3d 1272, 1287

n.13 (10th Cir. 2002).  As the United States Supreme Court noted:

> Even if an injury in fact is demonstrated, the usual rule is that a party may assert
> only a violation of its own rights.  However, in the First Amendment context,
> "'[l]itigants . . . are permitted to challenge a statute not because their own rights of
> free expression are violated, but because of a judicial prediction or assumption
> that the statute's very existence may cause others not before the court to refrain
> from constitutionally protected speech or expression.'"

Id. at 392-93 (internal citations omitted).

In cases involving a pre-enforcement challenge to the language of a statute or regulation,

a plaintiff may establish standing by showing either a credible threat of prosecution or the

statute's chilling effect on free expression.  Mangual v. Rotger-Sabat, 317 F.3d 45, 56-57 (1st

Cir. 2003).  In such a case, the evidentiary bar to establish standing is low.  See, e.g., Babbitt v.

United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979) (standing satisfied where the

plaintiff "has alleged an intention to engage in a course of conduct arguably affected with a

constitutional interest, but proscribed by a statute, and there exists a credible threat of

prosecution" under that statute); Mangual, 317 F.3d at 57 ("As to whether a First Amendment

---

under the First Amendment.  The court disagrees with the Defendants' contention.  The United
States Supreme Court, in City of Lakewood, stated that a facial challenge may be brought when
the law has "a close enough nexus to expression, or to conduct commonly associated with
expression," because then it does "pose a real and substantial threat of the identified [self-]
censorship risks."  486 U.S. at 759.  In the case at hand, the ordinances being challenged are
specifically aimed at door-to-door solicitation, an activity that is commonly associated with
expression and protected by the First Amendment.  See, e.g., Mainstream Mktg. Servs., Inc. v.
Federal Trade Comm'n, 358 F.3d 1228 (10th Cir. 2004) (addressing First Amendment challenge
to do-not-call-registry regarding telemarketers); City of Watseka v. Illinois Public Action
Council, 796 F.2d 1547, 1550 (7th Cir. 1986) ("The [United States] Supreme Court has
recognized substantial First Amendment protection for door-to-door solicitors.  See Wisconsin
Action Coalition v. City of Kenosha, 767 F.2d 1248, 1251 (7th Cir. 1985) (cataloguing Supreme
Court cases).").

plaintiff faces a credible threat of prosecution, the evidentiary bar that must be met is extremely low."); New Hampshire Right To Life Political Action Committee v. Gardner, 99 F.3d 8, 15 (1st Cir. 1996) ("[C]ourts will assume a credible threat of prosecution in the absence of compelling contrary evidence.").

The Defendants concede that the individual Plaintiffs (with the exception of Anthony Dye) have Article III standing to challenge Solicitation Ordinances #1, #2, and #4.  (See Defs.' Reply Mem. in Supp. of Defs.' Mot. for J. on the Pleadings at 5, 5 n.4.)  But they do not concede that the individual Plaintiffs have Article III standing to challenge Solicitation Ordinance #3. Rather, they contend that, while Solicitation Ordinance #3 was in effect (from October 2003 to April 4, 2004), the individual Plaintiffs (the Dealers) "did not apply for licensing, were not cited for violations of the ordinance, and did not challenge its legal sufficiency as applied to plaintiffs."  (Defs.' Reply Mem. in Supp. of Defs.' Mot. for J. on the Pleadings at 5.) Accordingly, they argue, the individual Plaintiffs have not established an injury-in-fact under Solicitation Ordinance #3.

In addition, the Defendants contend that the organizational Plaintiffs lack standing altogether because, Defendants assert, they have not established an injury-in-fact.  Specifically, the Defendants assert that the solicitation ordinances do not apply to the entities (i.e., the entities are not affected by the licensing requirements because they do not engage in the actual door-to-door solicitation, are not required to get a license in order to conduct their businesses, and thus they do not face a credible threat of prosecution).  (See Defs.' Mem. in Opp'n to Pls.' Mot. for Partial Summ. J. Relating to Ordinance No. 4 at 34-39.)  Further, Defendants contend that economic interests are not sufficient to establish an injury-in-fact in a First Amendment

13

challenge to the ordinances and the entity Plaintiffs do not satisfy the requirements for third-party

standing.  (Id. at 38.)  In a similar vein, the Defendants cite to Second Circuit precedent regarding

organizational standing under 42 U.S.C. § 1983 to support their position that the Distributors do

not have a personal right that may be redressed under the civil rights statute.  See e.g., League of

Women Voters of Nassau County v. Nassau County Bd. of Supervisors, 737 F.2d 155, 160 (2d

Cir. 1984) (stating that the Second Circuit "has restricted organizational standing under § 1983

by interpreting the rights its secures to be personal to those purportedly injured"and holding that

the plaintiff in that case did "not have standing to assert the rights of its members").

        Finally, the Defendants continue to assert that all of the Plaintiffs lack standing because

their speech is allegedly false and/or misleading and so is not protected under the First

Amendment.  (See, e.g., Defs.' Mem. of P&A in Opp'n to Pls.' Mot. for Partial Summ. J.

(Docket No. 72) at 23-27, 32-33; Defs.' Mem. in Opp'n to Pls.' Mot. for Partial Summ. J.

Relating to Ordinance No. 4 (Docket No. 169) at 7-27, 33-34.)[9]  This argument is discussed on

pages 20-22 of this order.

        1.    Individual Plaintiffs (the Dealers)

        The Defendants have conceded, in certain circumstances, that certain individual Plaintiffs

have standing.  Nevertheless, because standing is a jurisdictional requirement that cannot be

waived or stipulated to by the parties, the court addresses the standing of all the individual

Plaintiffs.  The court, however, need not analyze each Plaintiff's standing with respect to each

---

[9]Defendants, in their opposition to Plaintiffs' motion for partial summary judgment
regarding Solicitation #4,  request that the court grant summary judgment *sua sponte* in
Defendants' favor on the issue of standing.  (See Defs.' Mem. in Opp'n to Pls.' Mot. for Partial
Summ. J. Relating to Ordinance No. 4 at 39.)

solicitation ordinance.  Whether a particular Plaintiff has demonstrated injury-in-fact for one solicitation ordinance but not another – perhaps because he did not have a contract to sell Kirby vacuum cleaning systems at that time – is an issue for the damages phase of this case.  It is sufficient for the court at this time to determine that each individual Plaintiff has standing to challenge one or more of the solicitation ordinances at issue in this case.

Each Plaintiff has an interest in engaging in commercial speech, has expressed a desire to solicit in Kaysville, and has presented evidence of his actual solicitation and/or his intent to solicit in Kaysville City.  Some have been arrested and/or detained for soliciting in Kaysville.  All have refrained from soliciting for fear of criminal prosecution under one or more of the solicitation ordinances.

Indeed, Kaysville has not said that it will not enforce its solicitation ordinance, and it has demonstrated that it will not hesitate to enforce its solicitation ordinance.  The fact that Kaysville voluntarily agreed to cease enforcement of Solicitation Ordinance #2 does not eliminate the significance of its past enforcement actions or the Plaintiffs' restraint from soliciting in Kaysville.  Kaysville's past enforcement actions coupled with its actions in repealing and replacing its solicitation ordinances demonstrates its desire to establish a constitutional ordinance capable of enforcement.

Finally, there is no question that a decision favorable to the individual Plaintiffs would redress their injuries.  Based on this evidence, and the low evidentiary bar to establish standing, the court finds that all individual Plaintiffs (the Dealers) have standing to pursue this action.

15

2.      Organizational Plaintiffs

      a.      Distributors

Despite Defendants' arguments, the court finds that the Distributor Plaintiffs have

standing to pursue this action.  The parties spend much time on the issue of whether the

Distributors have third-party standing or organizational standing under 42 U.S.C. § 1983.  But

the court finds that the Distributors have their own First Amendment interests in advertising their

wares to the general public.  Because the avenue by which they have chosen to sell their product

(door-to-door solicitation) is the sole avenue used by Kirby and its Distributors, the solicitation

ordinances do indeed affect them and their constitutional rights.  The fact that the Dealers are

independent contractors of the Distributors is of no consequence.

      Also, while the Distributor Plaintiffs may not face direct threat of criminal prosecution,

they have amply proven that they have refrained from selling their wares in Kaysville because of

the burdens placed on their sales force and potential criminal sanctions faced by the Dealers.

See, e.g, Mangual v. Rotger-Sabat, 317 F.3d 45, 56-57 (1st Cir. 2003) (in cases involving a pre-

enforcement challenge to the language of a statute or regulation, a plaintiff may establish

standing by showing either a credible threat of prosecution or the statute's chilling effect on free

expression).  The Distributors' only method by which they can advertise their wares is through

the use of the Dealers, who are directly affected by the statute.  The interests of the Dealers and

the Distributors are intertwined and cannot be artificially separated, as the Defendants attempt to

do.

      b.      Redwood Division Pro Club 100%, Inc.

The situation, however, for Redwood Division Pro Club 100%, Inc. ("Redwood") is

16

different.  Redwood's only demonstrated injury is economic and there is no evidence that

Redwood has a free speech interest that is somehow being infringed upon as the result of the

solicitation ordinances.  Because Redwood essentially brings its causes of action under 42 U.S.C.

§ 1983, it does not have standing because it has not demonstrated a personal civil right affected

by the solicitation ordinances.  Accordingly, the court finds that Redwood does not have standing

to pursue this action.

**B.      Plaintiffs' Motions for Summary Judgment**

      1.      Summary Judgment Standard and Burden of Proof

Federal Rule of Civil Procedure 56 permits the entry of summary judgment "if the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to judgment as a matter of law.'"  Fed. R. Civ. P. 56©;  see Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 250-51 (1986); Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670

(10th Cir. 1998).  The court must "examine the factual record and reasonable inferences

therefrom in the light most favorable to the party opposing summary judgment."  Applied

Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990).

Although the Plaintiffs bear the burden of establishing that there is no genuine dispute of

a material fact, Kaysville, as the governmental entity restricting commercial speech, has the

burden to prove that each of its ordinances is constitutional.  Utah Licensed Beverage Ass'n v.

Leavitt, 256 F.3d 1061, 1070-71 (10th Cir. 2001) (quoting Bolger v. Youngs Drug Products

Corp., 463 U.S. 60, 71 n.20 (1983) ("The party seeking to uphold a restriction on commercial

speech carries the burden of justifying it.")).

17

> This burden "is not satisfied by mere speculation or conjecture"; in order to meet its burden, [Kaysville] "must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree."  In addition, a speech regulation "may not be sustained if it provides only ineffective or remote support for the government's purpose."  The [United States Supreme] Court cautions us that these requirements are "critical," for otherwise, "a State could with ease restrict commercial speech in the service of other objectives that could not themselves justify a burden on commercial expression."

Utah Licensed Beverage Ass'n, 256 F.3d at 1071 (internal citations omitted).

### 2.    Municipal Liability under 42 U.S.C. § 1983

Plaintiffs bring this civil rights action pursuant to 42 U.S.C. § 1983, which provides, in relevant part, that "[e]very person who, under color of any statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ."  42 U.S.C. § 1983.  A municipality may be liable under § 1983 if "the unconstitutional actions of an employee were representative of an official policy or custom of the municipal institution, or were carried out by an official with final policy making authority with respect to the challenged action."  Camfield v. City of Oklahoma City, 248 F.3d 1214, 1229 (10th Cir. 2001) (internal citations and quotation marks omitted).  See also Monell v. Department of Social Servs. of the City of New York, 436 U.S. 658, 690, 694 (establishing that municipalities may be directly liable under § 1983 for monetary, declaratory, or injunctive relief "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury").

Here, there is no dispute that the Defendants enacted or enforced the various solicitation

18

ordinances under color of law and that the ordinances themselves are an official policy of the

City enacted by officials with final policy making authority (that is, the Kaysville City Council).

The question is whether the Defendants' actions caused a deprivation of the Plaintiffs'

constitutional rights.  Answering that question requires engaging in a First Amendment analysis

of the language of the solicitation ordinances.

       3.     <u>First Amendment Analysis of the Solicitation Ordinances' Constitutionality</u>

The Plaintiffs present three arguments to support their position that the Solicitation

Ordinances #2, #3, and #4 are facially invalid under the First Amendment.[10]  First, "Solicitations

Ordinances #2, # 3, and # 4 can not satisfy the requirements of <u>Central Hudson</u> because of the

City's failure to base restrictions on factual findings, a plethora of exceptions to the supposed

justifiable restrictions, and a failure to use less restrictive alternatives."  (Pls.' Consol. Reply

Mem. at 9.)  Second, "Solicitation Ordinances # 2, # 3, and # 4 are facially unconstitutionally

vague because they fail to give adequate notice of prohibited conduct and to define standards to

be used by those enforcing the ordinances."  (<u>Id.</u>)  Third, "Solicitation Ordinances # 2, # 3, and

# 4 impose unlawful prior restraints because of the reservation to City officials unbridled

discretion in granting a license and review on appeal of the denial, as well as a failure to place

time restraints on administrative procedures required before judicial review of the denial of a

license may occur."  (<u>Id.</u>)  Further, regarding severability, the Plaintiffs assert that "Solicitation

Ordinances # 2, # 3 and # 4 are not subject to saving by desired severability because of the failure

of the Ordinances to provide for procedural protections to prevent a prior restraint." (<u>Id.</u> at 10.)

---

       [10]As noted below, the City has conceded that Solicitation Ordinance #1 is not
constitutional under the factors set forth in <u>Central Hudson</u>.  Accordingly, the Plaintiffs'
arguments regarding Solicitation Ordinance #1 will not be set forth here.

There is no dispute that the speech at issue in this case is commercial speech.[11]  When reviewing commercial speech regulations, the court must apply the test found in <u>Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of New York</u>, 447 U.S. 557 (1980).  Commercial speech receives less protection under the First Amendment than non-commercial speech.  <u>Central Hudson</u>, 447 U.S. at 563; <u>Florida Bar v. Went For It, Inc.</u>, 515 U.S. 618, 634-35 (1995) ("This case . . . concerns pure commercial advertising, for which we have always reserved a lesser degree of protection under the First Amendment."). Commercial speech regulations are subject to an intermediate level of scrutiny.  <u>Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of New York</u>, 447 U.S. 557, 573 (1980).

**Analysis Under *Central Hudson***

**Threshold Requirement That Speech Not Be Misleading or Related to Unlawful Activity**

<u>Central Hudson</u> established a three-part test governing First Amendment challenges to regulations restricting commercial speech, but it also contained a threshold requirement that the speech must not be misleading or concern unlawful activity.  <u>Central Hudson</u>, 447 U.S. at 563-64.  If the speech is misleading or concerns unlawful activity, it is entitled to no protection.  <u>Id.</u>  If the speech "is neither misleading nor related to unlawful activity," the threshold requirement is met and the three-part test, set forth below, applies.

<u>Central Hudson</u> defines misleading commercial speech as "commercial messages that do not accurately inform the public about lawful activity" and "forms of commercial communication that are more likely to deceive than to inform [the public]."  <u>Id.</u> at 563.  <u>See also</u> <u>Bolger v.</u>

---

[11]"Commercial speech" is defined as "expression related solely to the economic interests of the speaker and its audience."  <u>Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of New York</u>, 447 U.S. 557, 561 (1980).

Youngs Drug Products Corp., 463 U.S. 60, 69 (1983) (suggesting that doctrine extends beyond mere language in advertisement, the court defined misleading commercial speech as "false, deceptive, or misleading sales techniques").

The Defendants contend that Plaintiffs' speech does not satisfy the Central Hudson threshold requirement that the speech not be misleading, and, consequently, it is not protected. However, the City has framed the analysis in a way that is more relevant to an "as applied" challenge than a facial challenge.  See, e.g., Bolger, 463 U.S. at 61, 68-69 (looking at particular content of plaintiff's speech in "as applied" challenge);  Revo v. Disciplinary Bd. of the Supreme Court for the State of New Mexico, 106 F.3d 929, 931-33 (10th Cir. 1997) (same).

As long as the speech being regulated by the government (in this case, door-to-door solicitation in general) is not inherently misleading or concerning unlawful activity, the threshold requirement is relatively easy to establish in a facial challenge case.[12]  For example, the United States Supreme Court, in Posadas de Puerto Rico Assocs. v. Tourism Co. of Puerto Rico, 478 U.S. 328, 340-41 (1986), upon applying the threshold requirement from Central Hudson, stated:

> The particular kind of commercial speech at issue here [in this facial challenge case], namely, advertising of casino gambling aimed at the residents of Puerto Rico, concerns a lawful activity and is not misleading or fraudulent, at least in the abstract.  We must therefore proceed to the three remaining steps of the Central Hudson analysis in order to determine whether Puerto Rico's advertising restrictions run afoul of the First Amendment.

478 U.S. at 340-41 (emphasis added).  Accordingly, the evidence presented by the Defendants regarding the alleged misleading content and methods of Kirby vacuum cleaner sales teams is

---

[12]Incidentally, the Plaintiffs are not challenging the section of the ordinances that prohibits false or misleading speech.  (See § 16-11-15 (entitled "Deceptive Soliciting Practices Prohibited") of Solicitation Ordinances #2, #3, and #4.)

simply not relevant.

> [A] first amendment challenge to the <u>facial</u> validity of a statute is a <u>strictly legal question</u>; it does not involve the application of the statute in a specific factual setting. . . . [A]n ordinance that proscribes first amendment activity inhibits those who would speak but for the threat of criminal sanctions. . . . The standards to be applied in a case involving the application of a regulation, ordinance, or statute to a particular set of facts are quite different from the standards we apply to the general question of the facial constitutionality of these ordinances.  <u>In determining the facial validity of a statute or ordinance the court does not consider any specific type of conduct.  Rather, the facial validity of a statute is decided by reference to all of the conduct that is proscribed by the statute.</u>

<u>ACORN v. City of Tulsa</u>, 835 F.2d 735, 740 (10th Cir. 1987) (emphasis added).  <u>See also</u>

<u>Central Hudson</u>, 447 U.S. at 566-67 (finding that electrical utility's monopoly, and the allegation

that a monopoly does not need to advertise and so has "no commercial speech of any worth," did

not "alter the First Amendment's protection for its commercial speech"); <u>Mainstream Mktg.</u>

<u>Servs., Inc. v. Federal Trade Comm'n</u>, 358 F.3d 1228, 1233, 1236-37 (10th Cir. 2004)

(hereinafter "<u>Mainstream Mktg. II</u>")[13] (impliedly finding that commercial telemarketing, in

general, did not concern an unlawful activity or mislead, and, consequently, jumping directly to

three-part analysis under <u>Central Hudson</u>); <u>Lanphere & Urbaniak v. Colorado</u>, 21 F.3d 1508,

1513-14 (10th Cir. 1994) (finding, pursuant to <u>Central Hudson</u>'s threshold requirement, that law

firm's direct mail advertising was protected by the First Amendment because it concerned lawful

activity and because all commercial solicitations, not just misleading solicitations, were affected

by the legislation being challenged by the law firm); <u>National Adver. Co. v. City & County of</u>

---

[13]<u>Federal Trade Comm'n v. Mainstream Mktg. Servs., Inc.</u>, 345 F.3d 850, 853 (10th Cir. 2003) (hereinafter "<u>Mainstream Mktg. I</u>") granted a stay of the lower court ruling pending decision of the appeal on the merits.  345 F.3d at 852, 860-61.  Later, the Tenth Circuit issued its decision on the merits. <u>See Mainstream Mktg. Servs., Inc. v. Federal Trade Comm'n</u>, 358 F.3d 1228 (10th Cir. 2004) ("<u>Mainstream Mktg. II</u>").

Denver, 912 F.2d 405, 411 n.5 (10th Cir. 1990) (quoting ACORN v. City of Tulsa for same

proposition).  The court declines to engage in the analysis pressed by the Defendants regarding

the Plaintiffs' sales methods.  Rather, the court finds that Plaintiffs have satisfied the threshold

requirement of Central Hudson, and the court moves on to the issue of whether the solicitation

ordinances are facially valid under the First Amendment.

**Three-Part Central Hudson Test**

In Central Hudson, the United States Supreme Court set forth the test to be used in

analyzing restrictions placed on lawful and non-misleading commercial speech.  The Tenth

Circuit recently described the Central Hudson test: "Regulation of such commercial speech

passes constitutional muster if (1) the government asserts a substantial interest to be achieved by

the restrictions; (2) the restriction directly advances that government interest; and (3) the

restriction is narrowly tailored to meet that interest."  Federal Trade Comm'n v. Mainstream

Mktg. Servs., Inc., 345 F.3d 850, 853 (10th Cir. 2003) (hereinafter "Mainstream Mktg. I") (citing

Central Hudson, 447 U.S. at 566).  The Central Hudson factors "are not entirely discrete.  All are

important and, to a certain extent, interrelated[.]"  Greater New Orleans Broad. Ass'n, Inc. v.

United States, 527 U.S. 173, 183 (1999).

Defendants have conceded that Solicitation Ordinance #1 does not pass the Central

Hudson test:

> Since this Court last heard oral argument in this case and issued its Order dated
> December 10, 2004, the Tenth Circuit issued its decision in Mainstream
> Marketing, [358 F.3d 1228] on February 17, 2004. . . . In light of Mainstream
> Marketing, defendants concede that former Kaysville Ordinance § 16-11-1 *et seq.*
> (September 5, 2001) [Solicitation Ordinance #1] does not satisfy Central Hudson
> and burdens commercial speech.

(See Defs.' Mem. In Opp'n (Docket No. 72) at 34.)  The court agrees.  Accordingly, the court finds that Solicitation Ordinance #1 is facially invalid under the First Amendment.  Plaintiffs are entitled to summary judgment on that issue.

The court will, however, apply the Central Hudson test to Solicitation Ordinances #2, #3, and #4.

### Does Kaysville have a substantial government interest?

Under the first Central Hudson factor, "the government must assert a substantial interest to be achieved by the regulation."  Mainstream Mktg. II, 358 F.3d at 1237.  The City defines its substantial interests behind the ordinances as ensuring the privacy and welfare of its citizens in their homes and protecting them from fraud and other criminal behavior.  (See, e.g., Solicitation Ordinance #4.)  The Plaintiffs acknowledge that the City has substantial interests in the regulation of door-to-door solicitation.  (See Pls.' Mem. in Supp. (Docket No. 58) at 17 ("There is no dispute between the parties regarding the first Central Hudson requirement.").)

Plaintiffs contend that the ordinances fail to meet the final two Central Hudson factors. The Tenth Circuit noted the relationship between these final two factors: "Together, the final two factors in the Central Hudson analysis require that there be a 'fit between the legislature's ends and the means chosen to accomplish those ends.'" Mainstream Mktg. I, 345 F.3d at 853 (quoting United States v. Edge Broad. Co., 509 U.S. 418, 427-28 (1993)).

The City bears the burden of demonstrating that there is a reasonable fit between its substantial interests and the restrictions imposed by the ordinances.  Utah Licensed Beverage Ass'n, 256 F.3d at 1070.  The City must demonstrate that the ordinance does more than "provide ineffective or remote support for the government's purpose."  Central Hudson, 447 U.S. at 564.

24

Rather, the City must show that the ordinance "directly and materially advances the asserted governmental interest." Greater New Orleans, 527 U.S. at 188. The City points out, correctly, that "in response to a First Amendment challenge to a regulation, the government is not limited in the evidence it may use to support the asserted harms; it may demonstrate its justification with anecdotes, history, consensus, and simple common sense." Mainstream Mktg. I, 345 F.3d at 853-54 (citing Florida Bar v. Went For It, Inc., 515 U.S. 618, 628 (1995)). What the City cannot do, however, is fulfill its burden "by mere speculation or conjecture; rather a governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." Edenfield v. Fane, 507 U.S. 761, 770-71 (1993) (citations omitted).

### Do the ordinances directly advance the City's interests and are the ordinances more restrictive than necessary?

The balance of the Central Hudson test "concerns the relationship between the harm that underlies the [City's] interest and the means identified by the [City] to advance that interest." Lorillard Tobacco Co. v. Reilly, 533 U.S. 525, 555 (2001). The City must demonstrate that the ordinances do more than "provide ineffective or remote support for the government's purpose." Central Hudson, 447 U.S. at 564. Indeed, the City must show that each ordinance "directly and materially advances the asserted governmental interest." Greater New Orleans, 527 U.S. at 188. "A regulation need not be 'absolutely the least severe that will achieve the desired end,' but if there are numerous and obvious less-burdensome alternatives to the restriction on commercial speech, that is certainly a relevant consideration in determining whether the 'fit' between ends and means is reasonable." City of Cincinnati v. Discovery Network, 507 U.S. 410, 417 n.13

25

(1993).  If the ordinances impose an unlawful prior restraint or are unconstitutionally vague,
then, as a matter of law, the City cannot meet its burden of showing that the ordinances are not
more restrictive than necessary.  See, e.g., Nutritional Health Alliance v. Shalala, 144 F.3d 220,
227-28 (2d Cir. 1998) ("[T]he prior restraint doctrine does play a role in evaluating the regulation
of commercial speech. . . . [T]he test that the Supreme Court regularly applies to commercial
speech supports continuing to require procedural safeguards for prior restraints even where
commercial speech is involved.  That test requires us to consider whether the regulation . . . is not
more extensive than is necessary to serve [the asserted governmental] interest.") (internal
citations and quotation marks omitted).

**Analysis of Plaintiffs' Unlawful Prior Restraint Argument**

Under Solicitation Ordinances #2, #3, and #4, a person is not permitted to engage in door-
to-door solicitation (i.e., engage in commercial speech) in the City of Kaysville before obtaining
a license from the City.  Indeed, the ordinances make it a crime to solicit door-to-door without a
license.

The Plaintiffs contend that Solicitation Ordinances #2, #3, and #4 create an unlawful
prior restraint because the ordinances do not contain adequate procedural safeguards to protect
against abuse of official discretion.  In support of their position, the Plaintiffs point to the
following provisions:

- the catch-all phrase in Section 16-11-8 of all three ordinances, which provides that
  "[u]pon review [of the license application] the License Officer may ["shall" is
  used in Solicitation Ordinance #3] refuse to issue a Certificate to the applicant for
  any of the following reasons . . . . Any other reason rendering it manifestly

26

inappropriate to issue a Certificate." (See Solicitation Ordinances #2, #3, and #4 (emphasis added));

- the phrase in Section 16-11-10, which provides that "[e]xcept in the case of unusual circumstances, the Certificate of Registration shall be issued[14] within three ... business days following the applicant's submission of a completed application and payment of fees." (Solicitation Ordinances #3 and #4 (emphasis added));

- the phrase in Section 16-11-10 of Solicitation Ordinance #2, which provides that "[r]egistration shall be complete when the License Officer issues the Certificate of Registration." (Solicitation Ordinance #2 (containing no limitation on amount of time within which License Officer must issue Certificate of Registration).)

Given the provisions cited above, all three ordinances qualify as a prior restraint. "A scheme of prior restraint gives 'public officials the power to deny use of a forum in advance of actual expression.'" American Target Adver., Inc. v. Giani, 199 F.3d 1241, 1250 (10th Cir. 2000). Although prior restraints are not unconstitutional *per se*, there is a "heavy presumption against [a prior restraint's] constitutional validity." Id. There are two alternative factors that make a prior restraint unlawful: (1) "unbridled discretion in the hands of a government official or agency;" or (2) failure of the ordinance "to place limits on the time within which the decisionmaker must issue the license." Id. Here, both circumstances exist.

To avoid a finding of unbridled discretion, the act "must contain 'narrow, objective, and

---

[14]The language of Solicitation Ordinance #4 varies only in that it states that a Certificate "shall normally be issued" within three business days. (See Solicitation Ordinance #4 at § 16-11-10 (emphasis added).)

definite standards to guide the licensing authority.'" Id. at 1252.  "'Imprecise language may vest

authorities with the discretion to determine which groups and individuals are entitled to exercise

First Amendment rights.'" Id. at 1253 (quoting A.C.O.R.N. v. Municipality of Golden, Colorado,

744 F.2d 739, 747 (10th Cir. 1984)).  The court finds that the language "[a]ny other reason

rendering it manifestly inappropriate to issue a Certificate" gives unbridled discretion to the

City's License Officer to make decisions on license applications.

In addition, the language "except in the case of unusual circumstances" also gives

unbridled discretion to the City's License Officer to issue a decision on an application more than

three days after submission of the application (i.e., "unusual circumstances"is not defined in any

version of the ordinance).  In their briefs, Defendants provide their interpretation of what

"unusual circumstances" means, all of which appears to be reasonable, but the court is faced with

language that has the potential to allow the License Officer to withhold issuance of a license for

an unconstitutional reason and provide an unreviewable post hoc rationalization.  See City of

Lakewood v. Plain Dealer Publ'g Co., 486 U.S. 750, 757, 769 (1988) ("[T]he mere existence of

the licensor's unfettered discretion, coupled with the power of prior restraint, intimidates parties

into censoring their own speech, even if the discretion and power are never actually abused. . . .

[The presumption that the official will act in good faith and adhere to standards absent from the

ordinance's face] is the very presumption that the doctrine forbidding unbridled discretion

disallows.").

Finally, Section 16-11-10 in Solicitation Ordinance #2 creates an unconstitutional prior

restraint because it does not provide any time restraint on the License Officer's responsibility to

issue a decision on the application.  See American Target, 199 F.3d at 1250, 1253 (noting that

prior restraint is unconstitutional if an ordinance fails to provide time within which license must be granted or denied and stating that "[t]ime limits upon a prior restraint allay 'the risk of indefinitely suppressing permissible speech.'") (citation omitted).

Accordingly, the court finds that Solicitation Ordinances #2, #3, and #4 establish a licensing scheme that imposes an unconstitutional prior restraint.

**Analysis of Plaintiffs' Vagueness Argument**

Plaintiffs contend that the ordinances are unconstitutional because the vague language in Section 16-11-8 (allowing License Officer to deny license application for "[a]ny other reason rendering it manifestly inappropriate to issue a certificate") does not give proper notice to applicants regarding criteria for license eligibility and does not provide clear guidelines to the individual making the licensing decision. This argument is very similar to Plaintiffs' unlawful prior restraint argument. Because the court has already found that the ordinances, including the language cited in the Plaintiffs' vagueness argument, constitute an unlawful prior restraint, the court need not, and therefore declines, to address Plaintiffs' vagueness claim.

**Severability Analysis**

Having found certain portions of Solicitation Ordinance #4 unconstitutional, the court must do a severability analysis.[15] "Severability is an issue of state law. In Utah, the test is 'whether the legislature would have passed the statute without the objectionable part . . . . Frequently the courts are aided in the determination of legislative intent by the inclusion within a statute of a saving clause.'" American Target Adver., Inc. v. Giani, 199 F.3d 1241, 1250 (10th

---

[15]Because Solicitation Ordinances #2 and #3 are no longer in effect, the severability analysis is not necessary for those ordinances.

29

Cir. 2000) (internal quotation marks and citations omitted).  Solicitation Ordinance #4 contains a

saving clause that provides:

> If any provision of this Ordinance is held by a court of competent jurisdiction to
> be unconstitutional or for any reason invalid, such ruling or decision shall not
> affect the validity of the remaining provisions, which are adopted separately and
> independently and shall remain in full force and effect.

(Solicitation Ordinance #4 at § 4.)

Although a portion of Solicitation Ordinance #4 could probably be severed without a

problem,[16] another portion with facial deficiencies[17] could not be remedied by severing it from

the ordinance.  And the court may not re-write the ordinance to supply language that, if it had

been included in the ordinance, would remedy the ordinance's other constitutional infirmities.

Accordingly, the court is limited to holding the entire ordinance facially unconstitutional.  "A

severability clause creates a presumption that the legislature would have been satisfied with the

remaining portions of the enactment.  If the remaining enactment, however, is so 'incomplete or

riddled with omissions' that it lacks coherence, the entire enactment should be stricken."

Essence, Inc. v. City of Federal Heights, 285 F.3d 1272, 1291 (10th Cir. 2002) (internal citations

omitted).

Given the above analysis, the court finds that Solicitation Ordinances #2, #3, and #4 are

unconstitutional in their entirety because they constitute an unlawful prior restraint, which

necessarily leads to a finding that the City has not met its burden under the final factor of the

---

[16]See, e.g., Solicitation Ordinance #4 at § 16-11-8(3)(g) ("Any other reason rendering it
manifestly inappropriate to issue a Certificate.")

[17]See Solicitation Ordinance #4 at § 16-11-10 (containing the phrase "[e]xcept in the case
of unusual circumstances").

Central Hudson test (i.e., that the ordinances are not more restrictive than necessary).  Plaintiffs are entitled to summary judgment on their prior restraint and Central Hudson claims challenging Solicitation Ordinances #2, #3, and #4.

**C.**   **Defendants' Motion for Judgment on the Pleadings Pursuant to Rule 12©**

In Defendants' Motion for Judgment on the Pleadings, the Defendants seek dismissal of Plaintiffs' claims of First Amendment rights violations based on allegations of overbreadth, vagueness, and infringement of political speech rights (Causes of Action Nos. 1, 2, and 4).[18]

The court has already held that the ordinances are unconstitutional for other reasons. Accordingly, the court denies Defendants' Motion for Judgment on the Pleadings as moot.

**D.**   **Motions to Strike**

1.   Defendants' Motion to Strike Plaintiffs' First Motion for Partial Summary Judgment

The Defendants, asserting that Plaintiffs' First Motion for Partial Summary Judgment did not comply with Federal Rule of Civil Procedure 56, request an order striking the motion.  The Defendants present no argument or specifics in support of their Motion, unless the court counts the three paragraphs Defendants present in their opposition to the first motion for partial summary judgment.  (See Defs.' Mem. of P&A in Opp'n to Pls.' Mot. for Partial Summ. J. at 29-30.)  Apparently, Defendants take issue with Plaintiffs' citation to and reliance on the court's findings in the Preliminary Injunction Order.  The court does not find this a sufficient basis to strike the Plaintiffs' first motion for partial summary judgment.  Moreover, Plaintiffs do present

---

[18]They also challenged Plaintiffs' interstate commerce and equal protection claims (Causes of Action Nos. 7, 8, and 9), which, as noted above, have since been withdrawn by the Plaintiffs.

other evidence to the court in support of their motions.  The court prefers to determine the issues

on the merits.  Accordingly, the Defendants' Motion to Strike the Plaintiffs' First Motion for

Summary Judgment is DENIED.

> 2.      Plaintiffs' Motion to Strike Defendants' Exhibits

Plaintiffs seek an order from this court striking certain exhibits attached to the

Defendants' Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion for

Partial Summary Judgment.  Many of Defendants' exhibits were submitted to support their

argument that Plaintiffs' speech was false and/or misleading and therefore not subject to First

Amendment protection.  Because the court has held that the false and misleading speech issue is

not relevant in a facial challenge, the court has not considered the exhibits submitted by the

Defendants in support of their point.  Moreover, in light of the court's ruling on the Plaintiffs'

motions for partial summary judgment, the motion to strike is moot.  Accordingly, it is denied.

> 3.      Defendants' Motion to Strike Plaintiffs' Declarations

Defendants have asked the court to strike the declarations of Jeffrey Bowen, Benjamin

Lansford, Paul Reynolds, Kathy Ingram, and Steve Mantz.  Defendants contend that the

declarations "are replete with conclusory statements and wholly uncorroborated, self-serving

statements." (Defs. Mem. in Support of Mot. to Strike Pls.' Decls. at 5.)  The declarations were

not considered by the court in making its decision.  Accordingly, the Motion is denied as moot.

## **ORDER**

For the foregoing reasons, the court ORDERS as follows:

> 1.      Plaintiffs' Motion for Partial Summary Judgment (Docket No. 57) is GRANTED

IN PART AND DENIED IN PART.  Specifically, Plaintiff Redwood Division Pro Club 100%,

Inc. does not have standing to bring the § 1983 claims.  Accordingly, Redwood is not entitled to summary judgment.  However, the remaining Plaintiffs are entitled to summary judgment as sought in their motion.

      2.      Plaintiff's Motion for Partial Summary Judgment for Injunctive Relief as it Relates to Solicitation Ordinance # 4 (Docket No. 157) is GRANTED IN PART AND DENIED IN PART.  Specifically, Plaintiff Redwood Division Pro Club 100%, Inc. does not have standing to bring the § 1983 claims.  Accordingly, Redwood is not entitled to summary judgment. However, the remaining Plaintiffs are entitled to summary judgment as sought in their motion.

      3.      Defendants' Motion for Judgment on the Pleadings is DENIED AS MOOT.

      4.      Defendants' Motion to Strike Plaintiffs' Motion for Partial Summary Judgment is DENIED.

      5.      Plaintiffs' Motion to Strike Defendants' Exhibits is DENIED AS MOOT.

      6.      Defendants' Motion to Strike Plaintiffs' Declarations is DENIED AS MOOT.

IT IS SO ORDERED this 27th day of June, 2005.

                    BY THE COURT:

                    *Tena Campbell*

                    TENA CAMPBELL
                    United States District Judge